UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HELPFUL HOUND, L.L.C. | CIVIL ACTION |
| VERSUS | NO. 18-3500 c/w 18-3594 |
| NEW ORLEANS BUILDING CORPORATION AND CITY OF NEW ORLEANS | SECTION "R" (2) |

**ORDER AND REASONS**

Before the Court is defendants' motion to dismiss.[1] For the following reasons, the motion is granted in part and denied in part.

**I.   BACKGROUND**

This case arises out of a dispute over use of the name "St. Roch Market."[2] The original St. Roch Market is located at 2381 St. Claude Avenue, on the neutral ground of St. Roch Avenue. It is one of the few remnants of the once-extensive network of public markets in New Orleans.[3] The City leased stalls in St. Roch Market to various food vendors from the 1800s until

---

[1]   R. Doc. 37.
[2]   For a more extensive discussion of the facts of this case, see the Court's Preliminary Injunction Order and Reasons. R. Doc. 58.
[3]   Case No. 18-3594, R. Doc. 1 at 6 ¶ 17.

1945.[4] From 1945 until the 1990s, the City leased the market to the Lama family, who first operated a seafood market and po-boy restaurant at the site before converting the space to a supermarket in 1954.[5] The City then leased the space to a different tenant, which operated a seafood market, po-boy restaurant, and Chinese food restaurant until the space was damaged by Hurricane Katrina in 2005.[6] The City later renovated the building.[7]

On February 25, 2014, the City turned over management and operation of St. Roch Market to New Orleans Building Corporation (NOBC), a public benefit corporation created by the City of New Orleans.[8] NOBC leased the building to Bayou Secret, LLC on September 29, 2014.[9] The lease requires Bayou Secret to operate "a full service neighborhood restaurant" and "fresh foods market using multiple vendors in a 'stalls' concept."[10] Exhibit D to the lease provides that Bayou Secret "may utilize existing typeface logo for the St. Roch Market as is presently posted on the building and replicate this logo in additional locations of the building."[11] In February 2018, Bayou Secret

---

[4] *Id.* at 7 ¶ 19.
[5] *Id.* at 8 ¶ 24.
[6] *Id.* at 8-9 ¶¶ 27-28.
[7] *Id.* at 11 ¶ 36.
[8] *Id.* at 12 ¶ 38; *see also id.* at 3 ¶ 3.
[9] *Id.* at 13 ¶ 43.
[10] R. Doc. 21-1 at 5.
[11] *Id.* at 42.

2

and related entities opened a food hall called "St. Roch Market" in Miami.[12] Other locations of "St. Roch Market," such as in Chicago and Nashville, Tennessee, are also planned.[13]

Helpful Hound, L.L.C. (allegedly a member of Bayou Secret) applied for registration of "St. Roch Market" on April 6, 2017.[14] Although the U.S. Patent and Trademark Office (PTO) refused registration on the Principal Register,[15] the PTO allowed registration on the Supplemental Register on September 19, 2017.[16] The City and Helpful Hound have since filed competing applications for registration of "St. Roch Market" on the Principal Register.[17] Both applications remain pending.

On April 3, 2018, Helpful Hound brought a declaratory judgment action against the City and NOBC.[18] Helpful Hound's complaint seeks a declaration of noninfringement and a declaration that the registration of its service mark was proper.[19] The City and NOBC (collectively, plaintiffs) filed suit the next day against Bayou Secret; St. Roch F&B, LLC; Helpful Hound;

---

[12] Case No. 18-3594, R. Doc. 1 at 18 ¶ 70.
[13] *Id.* at 20 ¶¶ 78-79.
[14] Case No. 18-3594, R. Doc. 1-5 at 51.
[15] R. Doc. 21-2 at 2.
[16] Case No. 18-3594, R. Doc. 1-5 at 1.
[17] R. Doc. 18-7; R. Doc. 18-13.
[18] R. Doc. 1.
[19] *Id.* at 6 ¶¶ 37-38.

St. Roch Design District, LLC; Will Donaldson; Barre Tanguis; and David Donaldson (collectively, defendants).[20] According to plaintiffs' complaint, Bayou Secret changed its name to St. Roch F&B in June 2016; St. Roch Design District operates "St. Roch Market" in Miami; Will Donaldson is a manager of Helpful Hound and St. Roch Design District; Tanguis is a member of Helpful Hound and a manager of St. Roch Design District; and David Donaldson is a member of Helpful Hound.[21] Plaintiffs' complaint asserts a number of claims under both federal and state law, including trademark cancellation, trademark infringement, trademark dilution, unfair competition, breach of trademark license or implied trademark license, breach of contract, and unauthorized use of assumed name of a governmental entity. Defendants now move to dismiss plaintiffs' claims against St. Roch Design District for lack of personal jurisdiction; plaintiffs' Lanham Act claims under Federal Rule of Civil Procedure 12(b)(6); and plaintiffs' claims against the individual defendants under Rule 12(b)(6).[22]

---

[20] Case No. 18-3594, R. Doc. 1.
[21] *Id.* at 4-5 ¶¶ 5, 8-11.
[22] R. Doc. 37.

## II. DISCUSSION

### A. Personal Jurisdiction over St. Roch Design District

Defendants first contest whether St. Roch Design District is subject to personal jurisdiction in Louisiana.[23] Personal jurisdiction is "an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (internal quotation marks and citation omitted). A district court may exercise personal jurisdiction over a defendant if "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). Because Louisiana's long-arm statute, La. R.S. § 13:3201, extends jurisdiction to the limits of due process, the Court need only consider whether the exercise of jurisdiction in this case satisfies federal due process requirements. *Dickson Mar. Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999).

Personal jurisdiction may be either general or specific. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). General

---

[23] R. Doc. 37-1 at 5. Relatedly, defendants argue that plaintiffs failed to serve St. Roch Design District's registered agent for service of process. Plaintiffs have since properly served the company. *See* R. Doc. 44.

5

jurisdiction over a foreign defendant exists if the defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The Fifth Circuit has articulated a three-step inquiry to determine whether specific jurisdiction exists. *Seiferth*, 472 F.3d at 271. First, the plaintiff must show that "the defendant has minimum contacts with the forum state, *i.e.*, . . . it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there." *Id.* Second, the plaintiff must show that his "cause of action arises out of or results from the defendant's forum-related contacts." *Id.* If the plaintiff makes these showings, "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Id.*

When the district court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). But the district court is not required "to credit conclusory allegations,

even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

St. Roch Design District is a limited liability company registered in Florida.[24] Its principal place of business is also located in Florida.[25] Thus, there is no showing that St. Roch Design District is subject to general personal jurisdiction in Louisiana. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (noting that for a corporation, "[i]t is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business").

Plaintiffs argue that St. Roch Design District is subject to specific jurisdiction in this state because its members and managers, as well as its mailing address, are located in New Orleans.[26] "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017) (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A defendant's business activities in a state out of which the

---

[24]  *See* R. Doc. 37-2.
[25]  Case No. 18-3594, R. Doc. 1 at 4 ¶ 8.
[26]  R. Doc. 45 at 9.

7

dispute arises may provide the necessary connection. When a defendant avails itself of the privilege of conducting business in a state by deliberately engaging in significant activities there, its "activities are shielded by the benefits and protections of the forum's laws [and] it is presumptively not unreasonable to require [it] to submit to the burdens of litigation in that forum as well" for disputes arising out of its activities there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985) (internal quotation marks and citations omitted). In *Rudzewicz*, the Supreme Court addressed whether a Florida federal court had specific jurisdiction over a contract claim against a Michigan-based Burger King franchise. The Court held that there was specific jurisdiction in light of the franchisee's "voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters." *Id.* at 480. The Court also emphasized that the Miami headquarters of the franchisor "made the key negotiating decisions out of which the instant litigation arose." *Id.* at 481. The Court concluded that "the quality and nature of [the franchisee's] relationship to the company in Florida can in no sense be viewed as random, fortuitous, or attenuated." *Id.* at 480 (internal quotation marks and citations omitted).

Plaintiffs' allegations suffice to show minimum contacts between St. Roch Design District and Louisiana. According to plaintiffs' complaint, "St.

Roch Design District is the entity that, through its members and managers located in Orleans Parish, Louisiana, operates St. Roch Market Miami."[27] Plaintiffs allege that Will Donaldson and Tanguis are St. Roch Design District's managers.[28] Both individuals allegedly reside in Louisiana, where they also manage the original St. Roch Market.[29] Moreover, the company's address on file with the Florida Division of Corporations is 2381 St. Claude Avenue, New Orleans—the location of the original St. Roch Market.[30] These facts suggest that Donaldson and Tanguis control the operations of St. Roch Design District—including the continued use of the name "St. Roch Market"—from Louisiana. *See Rudzewicz*, 471 U.S. at 481. Additionally, the key decision to use the name "St. Roch Market," which gave rise to this litigation, arose out of these forum-related contacts. *See Seiferth*, 472 F.3d at 271. Plaintiffs have therefore alleged sufficient facts to support personal jurisdiction over their claims against St. Roch Design District.

Defendants do not argue, and the Court does not find, that the exercise of personal jurisdiction "would 'offend traditional notions of fair play and substantial justice.'" *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473

---

[27] Case No. 18-3594, R. Doc. 1 at 4 ¶ 8.
[28] *Id.* ¶¶ 9-10.
[29] *Id.*
[30] R. Doc. 37-2.

9

(5th Cir. 2006) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Five factors bear on this inquiry: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.* The burden on St. Roch Design District is low in light of its managers' residing in Louisiana, and Louisiana has a significant interest in protecting the intellectual property of its municipal entities. *See, e.g.*, La. R.S. § 51:281.2(A) ("[N]o person shall transact any business under an assumed name which contains the name of any . . . public facility without the written consent of the governing authority of the governmental entity which owns or operates the . . . public facility."). Additionally, the efficient administration of justice weighs in favor of keeping St. Roch Design District in this lawsuit, rather than requiring plaintiffs to file a separate suit in Florida. The other factors are at most neutral. Together, these factors do not suggest that the exercise of personal jurisdiction over plaintiffs' claims against St. Roch Design District would be unfair or unreasonable.

## B. Lanham Act Claims

Defendants next argue that plaintiffs fail to state a claim under the Lanham Act.[31] *See* 15 U.S.C. §§ 1051, *et seq.* To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence

---

[31] R. Doc. 37-1 at 6.

11

of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007), the claim must be dismissed.

Plaintiffs' complaint contains several Lanham Act claims. Count Three seeks cancellation of Helpful Hound's registration on the Supplemental Register because of fraud.[32] *See* 15 U.S.C. §§ 1092(2), 1119. Plaintiffs allege that Helpful Hound falsely represented that "St. Roch Market" had not been used in commerce before 2015.[33] Defendants seek dismissal of this count based on the affirmative defense of good faith.[34] *See Maids to Order of Ohio, Inc. v. Maid-to-Order, Inc.*, 78 U.S.P.Q.2d 1899 (T.T.A.B. 2006) ("Fraud . . . will not lie if it can be proven that the statement, though false, was made with a reasonable and honest belief that it was true or that the false statement is not material to the issuance or maintenance of the registration." (citation omitted)). Dismissal based on an affirmative defense is proper only when the "defense appears on the face of the pleadings." *Miller v. BAC Home*

---

[32] Case No. 18-3594, R. Doc. 1 at 27.
[33] *Id.*; *see also id.* at 17 ¶¶ 64-65.
[34] R. Doc. 37-1 at 18.

*Loans Servicing*, L.P., 726 F.3d 717, 726 (5th Cir. 2013) (quoting *Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)). In support of their good faith defense, defendants point only to the lack of any language in the lease restricting Bayou Secret's use of the mark. But this fact does not bear on whether defendants in good faith represented that the mark had not been used in commerce before 2015. Thus, defendants' good faith defense does not appear on the face of the pleadings.

Count Four asserts trademark infringement under 15 U.S.C. § 1114(1).[35] For the reasons discussed in the Court's Preliminary Injunction Order and Reasons, plaintiffs state a claim for trademark infringement. Count Four also asserts a claim for false designation of origin under § 1125(a).[36] Defendants argue that plaintiffs fail to allege facts supporting a likelihood of confusion between plaintiffs' and defendants' marks.[37] Again, for the reasons discussed in the Court's earlier order, plaintiffs have alleged sufficient facts in support of a likelihood of confusion.

Count Five alleges trademark dilution under § 1125(c).[38] Section 1125(c) protects famous marks. "[A] mark is famous if it is widely recognized

---

[35] Case No. 18-3594, R. Doc. 1 at 28.
[36] *Id.* at 30.
[37] R. Doc. 37-1 at 20.
[38] Case No. 18-3594, R. Doc. 1 at 31.

13

by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." § 1125(c)(2)(A). Several factors bear on whether a mark is widely recognized, including:

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
>
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
>
> (iii) The extent of actual recognition of the mark.
>
> (iv) Whether the mark was registered . . . on the principal register.

*Id.* Plaintiffs do not allege any advertising of St. Roch Market. Nor do they allege the amount, volume, or geographic extent of sales. The only allegation bearing on the mark's recognition is that the mark is "famous and well-known throughout the New Orleans area."[39] This conclusory allegation does not suffice to raise the plausible inference that the mark is "is widely recognized by the general consuming public of the United States." *Id.* Count Five of plaintiffs' complaint therefore fails to state a trademark dilution claim.

Defendants also assert two affirmative defenses that do not appear to be tied to any particular count: detrimental reliance and estoppel.[40]

---

39    Case No. 18-3594, R. Doc. 1 at 31 ¶ 140.
40    R. Doc. 37-1 at 18-19.

Detrimental reliance is a stand-alone claim under Louisiana law. *See* La. Civ. Code art. 1967; *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 334 (5th Cir. 2007). But defendants cite no authority recognizing detrimental reliance as an affirmative defense to Lanham Act claims.

Estoppel, also known as acquiescence, is a recognized defense in the trademark infringement context. *See, e.g.*, *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 153 (5th Cir. 1985); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1042 (Fed. Cir. 1992) (en banc), *abrogated on other grounds by SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954 (2017). There are three elements of estoppel by acquiescence: (1) the plaintiff made assurances to the defendant that it would not enforce its trademark rights; (2) the defendant relied on these assurances; and (3) enforcement of the plaintiff's rights would substantially prejudice the defendant. *See Conan Props.*, 752 F.2d at 153; *A.C. Aukerman*, 960 F.2d at 1041-43; *Minn. Mining & Mfg. Co. v. Beautone Specialties*, Co., 82 F. Supp. 2d 997, 1005 (D. Minn. 2000).

Defendants argue that plaintiffs misled them into believing that the City would not enforce its trademark rights in two ways. First, the City learned about defendants' merchandise bearing the name "St. Roch Market" in 2015, and Helpful Hound filed its first trademark application in April

15

2017, but plaintiffs did not send a cease-and-desist letter until January 2018. This argument is not supported by the pleadings. Plaintiffs' complaint asserts that NOBC CEO Cynthia Connick expressed "concern about the use of the St. Roch Market name" on merchandise sold by defendants "[w]hen NOBC learned that the merchandise was being sold."[41] The complaint further alleges that plaintiffs learned about Helpful Hound's trademark application and plans to open the Miami food hall in December 2017,[42] only one month before sending the cease-and-desist letter. These allegations in no way suggest that the City actively consented to defendants' infringing use of the mark. *See Reservoir, Inc. v. Truesdell*, 1 F. Supp. 3d 598, 613 (S.D. Tex. 2014) ("Acquiescence involves *active* consent by the senior user.") (citing *Sara Lee Corp. v. Kayser Roth Corp.*, 81 F.3d 455, 462 (4th Cir. 1996)). Defendants also argue that the City has failed to enforce its trademark rights against an earlier tenant of St. Roch Market. But this allegation does not appear in the pleadings. Thus, defendants are not entitled to dismissal based on their estoppel defense.

---

[41] Case No. 18-3594, R. Doc. 1 at 16 ¶ 60.
[42] *Id.* at 22 ¶ 83.

C.  **Individual Defendants**

Defendants' final argument is that plaintiffs' claims against the individual defendants—Will Donaldson, Tanguis, and David Donaldson—should be dismissed.[43] Defendants cite Louisiana Revised Statutes § 12:1320(B), which generally shields members and managers of a limited liability company from the company's liabilities. The statute includes an exception for "any breach of professional duty or other negligent or wrongful act by such person." La. R.S. § 12:1320(D). The Louisiana Supreme Court has interpreted this exception as covering traditional torts. *See Ogea v. Merritt*, 130 So. 3d 888, 901 (La. 2013) ("[I]f a traditional tort has been committed against any cognizable victim(s), that situation weighs in favor of the 'negligent or wrongful act' exception and in favor of allowing the victim(s) to recover against the individual tortfeasor(s)."). Thus, if a defendant's actions breached a duty he personally owed to a plaintiff and thereby caused injury, the defendant is not immune from liability merely because he acted as a member or manager of a limited liability company. *See id.* Trademark infringement, unfair competition, and related torts fall under this wrongful act exception. *See, e.g., Bd. of Comm'rs of Port of New Orleans v. Stern*, No. 15-6527, 2016 WL 6833632, at *4 (E.D. La. Nov. 21, 2016); *Audubon Real*

---

43  R. Doc. 37-1 at 21.

*Estate Assocs., L.L.C. v. Audubon Realty, L.L.C.*, Civil Action No. 15-115, 2016 WL 740467, at *3-5 (M.D. La. Feb. 24, 2016). Therefore, plaintiffs may maintain their tort claims against the individual defendants.[44]

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART defendants' motion to dismiss. Count Five of the City's complaint is DISMISSED.

New Orleans, Louisiana, this __9th__ day of August, 2018.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[44] Plaintiffs do not assert their contract claims—Counts Ten and Eleven—against the individual defendants. Case No. 18-3594, R. Doc. 1 at 36-40.