UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HELPFUL HOUND, L.L.C. | CIVIL ACTION |
| VERSUS | NO. 18-3500 c/w 18-3594 |
| NEW ORLEANS BUILDING CORPORATION AND CITY OF NEW ORLEANS | SECTION "R" (2) |

## ORDER AND REASONS

Before the Court is defendants Bayou Secret's, St. Roch F&B's, Helpful Hound's, St. Roch Design District's, Will Donaldson's, Barre Tanguis's, and David Donaldson's motion to clarify the Court's order granting plaintiff New Orleans Building Corporation's (NOBC) and the City of New Orleans' motion for a preliminary injunction.[1] The Court denies defendants' motion because it cannot evaluate whether hypothetical marks are likely to cause confusion with the name "St. Roch Market."

## I. BACKGROUND

This case arises out of a dispute over use of the name "St. Roch Market."[2] Defendants have been the lessors of the St. Roch Market located

---

[1] R. Doc. 62.
[2] For a more extensive discussion of the facts of this case, see the Court's Preliminary Injunction Order and Reasons. R. Doc. 58.

at 2381 St. Claude Avenue in New Orleans since February 25, 2014.[3] The terms of their lease allow them to "utilize existing typeface logo for the St. Roch Market as is presently posted on the building and replicate this logo in additional locations of the building."[4] In February 2018, Bayou Secret and related entities opened a food hall called "St. Roch Market" in Miami.[5] They also plan to open St. Roch Markets in locations such as Chicago and Nashville.[6]

On April 3, 2018, Helpful Hound brought a declaratory judgment action against the City and NOBC seeking a declaration of noninfringement on the St. Roch Market logo.[7] On April 4, 2018, plaintiffs brought suit for, *inter alia*, trademark infringement and breach of trademark license.[8] The Court consolidated these cases on April 12, 2018.[9] On August 9, 2018, the Court granted a preliminary injunction enjoining defendants from using the designation "St. Roch Market" in connection with any food hall or public food market in any location other than 2381 St. Claude Avenue, New Orleans,

---

[3] Case No. 18-3594, R. Doc. 1 at 12 ¶ 38.
[4] R. Doc. 21-1 at 42.
[5] Case No. 18-3594, R. Doc. 1 at 18 ¶ 70.
[6] *Id.* at 20 ¶¶ 78-79.
[7] R. Doc. 1.
[8] Case No. 18-3594, R. Doc. 1.
[9] Case No. 18-3594, R. Doc. 8; R. Doc. 4.

Louisiana, and 140 NE 39th Street, Suite 241, Miami, Florida.[10] Defendants now seek clarification as to whether the preliminary injunction includes other confusingly similar designations.[11] In its motion, defendants indicate that they are considering future use of designations such as "St. Roch," "St. Roch Hall," and "St. Roch Food Hall."[12] They want to know whether these hypothetical names would violate the preliminary injunction.[13] Plaintiffs argue, *inter alia*, that ruling on whether a potential designation that defendants do not currently use is confusingly similar constitutes an impermissible advisory opinion.[14]

## II. DISCUSSION

In their motion for a preliminary injunction, plaintiffs requested that the Court enjoin defendants from using the designation "St. Roch Market" or any confusingly similar mark.[15] The Court granted plaintiffs' motion, but issued an injunction that prevents defendants "from using the designation 'St. Roch Market' in connection with any food hall, or any other type of public

---

[10] R. Doc. 58.
[11] R. Doc. 18.
[12] R. Doc. 62-1 at 2.
[13] *Id.* at 4.
[14] R. Doc. 67 at 1-2.
[15] R. Doc. 18 at 1.

food market, at any location other than [the New Orleans and Miami locations]."[16]  The Court did not rule on confusingly similar marks in that order because the parties discussed only the mark "St. Roch Market."  No confusingly similar marks were before the Court at that time.

The Court could not have issued an injunction against "confusingly similar marks" in the abstract, because the likelihood of confusion is a fact-based inquiry that can be decided only in individual cases.  *See* 5 Gilson on Trademarks § 5.01 (2018) ("The subjective nature of the 'likelihood of confusion' test and the myriad . . . facts and factors typically involved have led the courts to adopt a basic principle: Each case must be decided on its own facts."); *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009) (holding that no factor is dispositive in the confusion analysis because they "may weigh differently from case to case, depending on the particular facts and circumstances involved" (internal quotation marks omitted)).  The term "confusingly similar" refers merely to a legal test.  An entity is entitled to trademark protection against marks identical to their protected mark, and against marks that create a "likelihood of confusion between [the protected] mark and that of the defendant." *Union Nat'l Bank of Tex., Laredo v. Union Nat'l Bank of Tex., Austin*, 909 F.2d 839, 844 (5th

---

[16] R. Doc. 58 at 42.

Cir. 1990). The Court must apply the legal test to a certain mark to determine whether that mark is confusingly similar. Because the only mark before the Court was "St. Roch Market" when it ruled on the preliminary injunction, the preliminary injunction covers only that mark.

But while the current injunction covers only "St. Roch Market," the Court's analysis in its order granting the preliminary injunction makes clear that if defendants were to use a confusingly similar mark, the Court would grant another motion for a preliminary injunction against that mark. Plaintiffs have already established that their mark is eligible for trademark protection[17] and that they are the senior users.[18] *Union Nat'l Bank*, 909 F.2d at 844. They have also established that there is a substantial threat that the movant will suffer irreparable harm if an injunction is not granted; that the threatened injury outweighs the potential injury; and that the preliminary injunction will not disserve the public interest.[19] *Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003). Plaintiffs could therefore move for a preliminary injunction against any new mark and prevail if the Court determines that the mark creates a likelihood of confusion with "St. Roch Market." *Union Nat'l Bank*, 909 F.2d at 844.

---

[17] R. Doc. 58 at 18.
[18] *Id.* at 25.
[19] *Id.* at 37-41.

Defendants now offer several hypothetical marks that they may attempt to use at future food markets.[20] They ask the Court to rule on whether these marks are confusingly similar, and on whether they are covered by the injunction.[21] But "[c]ontext is critical to a likelihood-of-confusion analysis." *Viacom Int'l v. IJR Cap. Inv., LLC*, 891 F.3d 178, 192 (5th Cir. 2018). To determine whether a mark creates a likelihood of confusion, courts use seven digits of confusion that form a "flexible and nonexhaustive list." *Id.* at 192 (quoting *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir. 2004)). These digits are: "(1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion." *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664 (5th Cir. 2000). Courts "must consider the application of each digit in light of the specific circumstances of the case." *Viacom*, 891 F.3d at 192.

For example, in *Viacom*, the Fifth Circuit hesitated to analyze the likelihood of confusion for a restaurant name when the alleged infringer had

---

[20] R. Doc. 62-1 at 2-3.
[21] *Id.* at 4-5.

not yet opened its restaurant, even though the defendant had taken concrete steps to open the restaurant and had filed an intent-to-use trademark application for the name. *Id.* at 193. In analyzing the likelihood of confusion, the Fifth Circuit relied on information contained in a business plan to compare the similarity of products at the two businesses, the overlap in purchasers, and planned advertising. *Id.* at 193-95.

The defendants in this case have only considered the possibility of using marks other than "St. Roch Market."[22] They have not taken the necessary steps—such as to establish the exact locations at which a similar mark would be used, or to create advertising and branding materials using the similar mark—to provide context that would allow the Court to evaluate whether these other marks create a likelihood of confusion. Without this information, the Court cannot determine the likelihood of confusion with the existing mark. *See id.* at 193-97; *House of Vaccums*, 381 F.3d at 485 (giving examples of how advertisement design affects the way that "a customer perceives [a mark] in the marketplace"); *see also Windsurfing Intern. Inc. v. AMF Inc.*, 828 F.2d 755, 758 (Fed. Cir. 1987) (holding that a mere desire to use a mark does not create a justiciable controversy, and that the mark must actually be in use before the Court can consider infringement). The Court

---

[22] *Id.* at 2.

therefore denies defendants' request to evaluate their potential use of marks other than "St. Roch Market."

## III. CONCLUSION

For the foregoing reasons, defendants' motion to clarify the judgment is DENIED.

New Orleans, Louisiana, this __3rd__ day of December, 2018.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE